C. DENNIS LOOMIS (SBN: 82359)
   E-Mail: cdloomis@buchalter.com
AARON LEVINE (SBN: 299260)
   E-Mail: alevine@buchalter.com
BUCHALTER, A PROFESSIONAL CORPORATION
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Fax: (213) 896-0400
Tel.: (310) 490-3373

Attorneys for Plaintiff,
JANGLE VISION, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANGLE VISION, LLC., a California limited liability company,<br><br>          Plaintiff,<br><br>vs.<br><br>ALEXANDER WANG INCORPORATED, a Delaware Corporation; ALEXANDER WANG, an individual; and DOES 1 through 10, inclusive<br><br>          Defendants. | **Case No. 2:21-cv-06627**<br><br>**COMPLAINT FOR:**<br><br>1. **COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 101, *etc.*;**<br><br>2. **UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200);**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Jangle Vision, LLC ("Plaintiff" or "Jangle Vision"), by and through its attorneys, hereby alleges as follows:

**PARTIES**

1.     Plaintiff is, and at all times pertinent to this action has been, a limited liability company duly organized and existing under the laws of the State of California, and having its principal place of business at 225 S. Gale Drive # B, Beverly Hills, California 90211.

2.     Plaintiff is informed and believes, and on that basis alleges, that defendant Alexander Wang Incorporated ("AWI") is, and at all times pertinent to this action has been, a foreign corporation duly organized and existing under the laws of the State of Delaware with a place of business at 386 Broadway, Third Floor, New York, New York 10013.  Plaintiff is further informed and believes, and on that basis alleges, that AWI is an internationally recognized designer of upscale, high fashion apparel and accessories, including luxury hand bags, and is the owner and operator of upscale retail stores and store-in-stores under the brand name "Alexander Wang."  At all times material hereto, AWI has operated its Instagram page at the URL: www.Instagram.com/alexanderWangNY and has operated its Facebook page at the URL: www.Facebook.com/AlexanderWangNY.

3.     Plaintiff is informed and believes, and on that basis alleges, that defendant Alexander Wang ("Mr. Wang") is an individual and resident of the State of New York.  Plaintiff is further informed and believes, and on that basis alleges, that Mr. Wang is a world famous fashion designer and the Co-Founder, Chairman, and Creative Director of AWI.  At all times material hereto, Mr. Wang has operated his Instagram page at the URL: www.Instagram.com/alexwangny.  (AWI and Mr. Wang will sometimes be referred to collectively as "Defendants.")

4.     Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names DOES 1 through 10, inclusive, and therefore sues such

defendants by such fictitious names.  Plaintiff will amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named "DOE" defendants are legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

5.     Plaintiff is informed and believes, and on that basis alleges, that all defendants, including the fictitious DOE defendants, were at all relevant times acting as actual agents, captive agents or brokers, conspirators, ostensible agents, partners, brokers and/or joint venturers, and/or employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization, and ratification of their co-defendants; however, this allegation is pleaded as an alternative theory wherever not doing so would result in a contradiction with other allegations.

6.     Plaintiff is informed and believes and on that basis alleges that, at all times herein mentioned, there was a unity of interest and ownership between Mr. Wang and AWI such that the individuality and separateness between them ceased to exist if in fact it ever existed; Mr. Wang used assets of AWI for his own purposes, and assets of AWI and Mr. Wang were otherwise commingled; at all relevant times, Mr. Wang controlled AWI; Mr. Wang used AWI as a vehicle for conducting his personal business; and Mr. Wang so managed and controlled AWI that it would sanction fraud and promote injustice if he were not held responsible for the obligations of AWI.

## JURISDICTION AND VENUE

7.     This is an action for federal copyright infringement under 17 U.S.C. §§ 101 *et seq.*, and unfair competition under California Business and Professions Code

§§ 17200 *et seq*.

8.     This Court has jurisdiction over the subject matter of this lawsuit pursuant to, *inter alia*, 28 U.S.C. § 1331 and 1338(a).

9.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Jangle Vision and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

10.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

11.     This Court has personal jurisdiction over the Defendants because they have systemic and continuous contacts with the State of California, including by having formed businesses that serve and target customers who reside in the State of California.  Further, Defendants have committed acts of copyright infringement, and the other acts complained of herein, in this judicial district.  Venue is proper in the Central District under 28 U.S.C. § 1391(b)(2) and (d).

## FACTUAL ALLEGATIONS

12.     Jangle Vision is a multi-faceted art and design house focusing on the intersection of art and design in real world and technical applications, based in Beverly Hills, California.  Claudia D. Messica, aka Claudia Diroma (hereinafter "Ms. Diroma"), is Plaintiff's Managing Member, Creator, and artistic driving force.

13.     Commencing in or around 2015, and continuing thereafter, Ms. Diroma created a series of original, visually arresting, highly distinctive two-dimensional drawings, animated video clips and related graphical works depicting androgynous-presenting female characters that are readily distinguishable and immediately identifiable by, among other details, the lithe, angular shape of their bodies and their skin-tight full body suits or "skins" in pink, blue, black and red, revealing only their eyes and mouth through openings in the face of the skin.  Each skin color is symbolic of the changing chameleon-like "skins" that women, out of necessity or social pressure, take on in their daily lives.  Each colored skin

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45690905v16

represents a different totem within the Jangle Vision brand.  (These works will be referred to collectively as the "Jangle Vision Twins.")  The Jangle Vision Twins are original to Ms. Diroma and are copyrightable subject matter.  Representative images of the Jangle Vision Twins are set forth herein below:



14.    On or about July 15, 2020, Ms. Diroma assigned all exclusive worldwide rights, title and interest in and to the Jangle Vision Twins, including the copyrights thereto, to Plaintiff.  In 2020, Plaintiff obtained the following United States Copyright Registrations for works featuring the Jangle Vision Twins:

  a. Plaintiff is the owner of United States Copyright Registration No. VA 2-221-293 for its two-dimensional artwork entitled Jangle Vision Original Face Revised.  The date of first publication of this registered work is June 30, 2017.  The effective date of this registration is September 07, 2020.  A copy of the United States Federal Copyright Certificate of Registration for this work is attached hereto as **Exhibit A.**

  b. Plaintiff is the owner of United States Copyright Registration No. PA 2-261-827 for its motion picture entitled Jangle Vision Video.  The date of first publication of this registered work is April 3, 2018.  The effective date of this registration is September 07, 2020.  A copy of the

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45690905v16

United States Federal Copyright Certificate of Registration for this motion picture is attached hereto as **Exhibit B**.

c. Plaintiff is the owner of United States Copyright Registration No. VA 2-223-013 for its two-dimensional artwork entitled Jangle Twin Series. The date of first publication of this registered work is June 30, 2018. The effective date of this registration is September 07, 2020.  A copy of the United States Federal Copyright Certificate of Registration for this work is attached hereto as **Exhibit C**.

15.    On or around November 26, 2018, Ms. Diroma, submitted an online application to AWI for a position as a temporary graphic designer.  Shortly thereafter, Ms. Diroma also entered an online contest to be authorized to photograph one of AWI's runway shows.  In connection with these applications Ms. Diroma provided Defendants with links to the Jangle Vision website and a copy of her artistic portfolio, which included all of the artwork that Ms. Diroma had produced under the Jangle Vision brand through November 26, 2018, including collections of individual Jangle Vision Twins in different colored skins framed within circular structures.  The circular shape was intentionally selected to visually communicate the differing environments within which women are framed during their daily lives, another core theme of the Jangle Vision brand that extends the symbolism of the different colored skins.

16.    On or around December 4, 2018, Ms. Diroma was contacted via telephone by Juno Kim, a Talent Acquisition Consultant for Defendants.  During their conversations, Mr. Kim confirmed that Defendants received a copy of Ms. Diroma's application and portfolio, told her that her work and résumé stood out from the other applicants, and inquired further regarding Ms. Diroma's interest in the available graphic designer position.  The two discussed Ms. Diroma's professional background and salary requirements before Mr. Kim's focus eventually shifted to the Jangle Vision Twins, which he praised effusively.

17.     During this conversation, which lasted one hour, Mr. Kim solicited information from Ms. Diroma regarding the Jangle Vision Twins and her inspiration for creating the characters.  During this discussion Ms. Diroma explained to Mr. Kim that the twins, which she had been working on for nearly seven years, embodied her artistic alias and served as the central focus and face of Ms. Diroma's creative outlet, the Jangle Vision brand.  Ms. Diroma further explained that the different colored skins worn by the Jangle Vision Twins were designed to represent the Universal Woman, wearing many "skins" during her daily life and constituting different totems within the Jangle Vision brand.

18.     At the conclusion of their conversation, Mr. Kim told Ms. Diroma that she needed to provide Defendants with additional character designs before her application could be considered by Defendants.  Mr. Kim further instructed that Defendants were very difficult to please, and as such, these additional materials, which he requested should include a stand-alone page on Ms. Diroma's website specifically tailored to Defendants and its design team. Mr. Kim also requested that the materials be transmitted to Defendants by email delivery to Mr. Kim through both his AWI and personal email addresses.

19.     At no point did Mr. Kim ever inform Ms. Diroma that the submitted materials would be used by Defendants for any purpose other than to confidentially evaluate Ms. Diroma's qualifications for the open designer position.  Similarly, Ms. Diroma never provided Mr. Kim or anyone else at Defendants with approval for Defendants to utilize the submitted materials for any purpose other than to consider her qualifications for the position.

20.     Wanting to make a good impression, Ms. Diroma did exactly what was requested, and on December 8, 2018, Ms. Diroma sent Mr. Kim an email containing the requested materials and a link to the Jangle Vision website, which had been specifically curated for Defendants.  Responding to the special interest Mr. Kim had expressed in the Jangle Vision Twins, this specially curated content

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45690905v16

prominently featured multiple images of the Jangle Vision Twins in the different colored skins and framed in circular environments as described in paragraph 15 above, revealing the essence and the details of the Jangle Vision Twins Universal Woman concept and brand.

21.     Shortly after transmitting the email, Ms. Diroma contacted Mr. Kim asking that he confirm his receipt of the submitted materials.  Mr. Kim never responded to this inquiry.  Similarly, neither Mr. Kim, nor any other representative from Defendants, ever contacted Ms. Diroma about the job or contest that she had applied for.

22.     Having heard nothing at all from Defendants after her final submission of specially selected artwork to Defendants on December 8, 2018, Ms. Diroma was surprised to receive an automated notification from the LinkedIn system on July 1, 2020, that Mr. Kim had viewed her LinkedIn profile.  Then, several hours later on that same date, Ms. Diroma received multiple contacts from friends and associates familiar with her Jangle Vision Twins works, advising her that a video clip advertisement displaying 3D animated versions of the Jangle Vision Twins had been posted on Defendants' Instagram page – with approximately 5.4 million followers – promoting Defendants' line of luxury, high priced "rhinestone" designer hand bags.  Each hand bag in the Defendants' rhinestone product line is distinguished by the exterior of the bag being completely covered with affixed rhinestones.

23.     The advertisement consists of an approximately twenty-second long video featuring two androgynous-presenting, lithe female characters, each of whom is clad in a pink "skin" with only the eyes and mouth visible through openings in the face of the skin.  Like the materials submitted by Ms. Diroma, the female characters in the Defendants' advertisement were framed within circular environments.  Specifically, they were depicted lounging in a round martini-glass-shaped pool.  These animated characters are unmistakably based on, derivative of

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45690905v16

1  and flagrantly infringe the copyrighted Jangle Vision Twins.  (These infringing

2  reproductions of the Jangle Vision Twins will be referred to collectively as the

3  "Infringing Characters.") As the ad continues, the camera pans out to reveal

4  additional Infringing Characters lounging in similar circular pools.  The animated

5  display progressively evolves to reveal that the pools populated by Infringing

6  Characters are not pools at all, but rather, are individual rhinestones on the

7  advertised rhinestone hand bag.  A representative image from Defendant's

8  Instagram ad, posted July 1, 2020 and currently available through Defendant's

9  Instagram page, is set forth herein below:



20      24.     Ms. Diroma also discovered that the above-described advertisement

21  was posted on July 1, 2020, to Defendants' Facebook page, which is followed by

22  approximately 830,000 people.

23      25.     Moreover, Mr. Wang posted the same advertisement to his personal

24  Instagram account, which has approximately 435,000 followers.

25      26.     Thereafter, on July 2, 2020, Ms. Diroma discovered that a second

26  advertisement featuring Infringing Characters was posted by Defendants' Instagram

27  page.  Like the first advertisement, the second advertisement was a video clip,

28  which prominently featured Infringing Characters framed lounging within circular

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45690905v16

martini-glass-shaped pools which were revealed to be rhinestones on Defendants'
hand bag.  (This advertisement and the advertisement described in paragraph 23
above will sometimes be referred to collectively herein as the "Infringing Ads.")  A
representative image from this advertisement is set forth below:

/

/



27.     The Infringing Ads continue to be presented to the public through
Defendants' social media platforms, which are accessed by tens of millions of
individual consumers throughout the United States and throughout the world.

28.     In addition to the Infringing Ads, Ms. Diroma also learned that
Defendants presented the Infringing Characters in a series of targeted email
advertisements.  The first email, sent to Defendants' customer database on July 1,
2020, featured a still image of the advertisement identified in paragraph 26 above.
A second email, sent to Defendants' customer database on July 8, 2020, featured a
view from the back of a lithe female figure clad in a black "skin" which clearly

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45690905v16

evokes and infringes the Jangle Vision Twins characters, with Defendants' rhinestone bag draped over the character's shoulder. Each of these blast email advertisements includes links which redirect potential customers to Defendants' website where they could purchase the identified bag. (These email campaigns will sometimes be referred to collectively as the "Infringing Emails.")

29. Plaintiff is informed and believes, and on that basis alleges, that the Infringing Ads were also prominently displayed on "point of sale" video monitors and signage within Defendants' retail stores and store-in-stores, both in the United States and throughout the world.

30. Plaintiff is informed and believes, and on that basis alleges, that prior to Defendants' July 2020 launch of the massive online marketing campaign of the Infringing Ads and Infringing Emails promoting Defendants' rhinestone hand bag line, Defendants had been marketing, promoting and selling identical or substantially similar rhinestone studded luxury hand bags since not later than January 2020. Plaintiff is further informed and believes, and on that basis alleges, that after, and as a direct, proximate consequence of, the July 2020 launch and continuing presentation of the Infringing Ads and Infringing Emails, the sales of the Defendants' rhinestone hand bags dramatically increased.

31. Plaintiff is informed and believes, and on that basis alleges, that from July 2020, through November 2020, Defendants expanded its line of rhinestone hand bags from two to seven distinct styles, at retail prices as high as $1,895 per product. These additional styles were also offered in additional colors, each of which is included in the color palette of the Jangle Vision Twins disclosed by Ms. Diroma to Defendants in December 2018.

32. Plaintiff is informed and believes, and on that basis alleges, that Defendants further exploited the massive consumer interest in the rhinestone handbag line created by the Infringing Characters, the Infringing Ads and the Infringing Emails to add additional high-priced rhinestone-embedded products to

its product offerings.  Before Defendants' infringing ad campaign began in July 2020, Defendants offered one rhinestone hand bag and one rhinestone embedded shoe design.  Following the success of the infringing ad campaign, Defendants added the additional hand bag styles and colors alleged above, and also added satin pouches with rhinestone embedded handles, rhinestone knot earrings, and rhinestone embedded nylon pouches, slippers, sandals and bracelets.  (These new product offerings will sometimes be referred to collectively as the "Spin-Off Products.")  Defendants' advertising for the rhinestone sandals additionally infringe the Jangle Vision Twins by displaying a lithe female figure clad in a black "skin," which itself evokes and infringes the Jangle Vision Twins, wearing the sandals, thereby evoking that design detail on the Jangle Vision Twins wearing black foot coverings.

33.     Plaintiff is informed and believes, and on that basis alleges, that Defendants' misappropriation of Plaintiff's post-modern, universal, chameleon "Universal Woman" manifested in the Jangle Vision Twins and unlawfully copied in the Infringing Characters became the cornerstone of an entirely new branding concept for not only the rhinestone hand bag line and the Spin-Off Products, but for Defendants' entire fashion apparel and accessory collection.  Plaintiff is informed and believes, and on that basis alleges, that the keystone of Defendants' brand building efforts was the social media campaign launched in July 2020 with the Infringing Ads and augmented with paid advertising on Instagram and Facebook incorporating the content from the Infringing Ads.

34.     Plaintiff is informed and believes, and on that basis alleges, that a unique and uniquely valuable element of such online social media advertising to the advertiser is the wealth of data captured and analyzed by the media platforms about each unique visitor who views the given ad and is then tracked with each further visit.  This data enables the advertiser to identify content that produces particularly strong responses, to target additional advertising to the interested consumers, to

tailor further advertising to reinforce and increase the consumer's interest in the advertiser's brand, and ultimately to convert the consumer's interest into product purchases. The system works like a funnel, and is successful to the extent that an advertisement with compelling, exciting, groundbreaking content is at the top of the funnel, drawing consumers into the funnel and then producing not only sales of the particular product featured in that ad, but all of the ancillary and extremely valuable benefits described above, including further product sales and brand enhancement.

35.     Plaintiff is informed and believes, and on that basis alleges, that the Infringing Ads were the perfect vehicle to be at the top of the funnel. Plaintiff is further informed and believes, and on that basis alleges, that Defendants expended hundreds of thousands of dollars, or more, over more than one year in paid social media advertising featuring the Infringing Ads, Infringing Characters and other infringing content. This paid social media advertising has thereby reached over one billion users of the Facebook and Instagram platforms worldwide.

36.     Plaintiff is informed and believes, and on that basis alleges, that as a direct, proximate consequence of all of the infringing activity alleged above, Defendants' overall product sales and brand recognition and value has increased by huge margins.

## FIRST CLAIM FOR RELIEF

**(Federal Copyright Infringement Under 17 U.S.C. §§ 101 et. seq.**

**-   Against Defendants and DOES 1-10, Inclusive)**

37.     Plaintiff re-alleges and incorporates here by this reference each of the allegations set forth in paragraphs 1 through 36 hereof, inclusive, as if fully set forth here.

38.     Plaintiff is the owner of all worldwide right, title and interest in and to each and all of the several Jangle Vision Twins works, including the registered copyrights thereto.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45690905v16

39.     Defendants had full and complete access to and knowledge of the Jangle Vision Twins, in that Defendants affirmatively solicited, sought out and received complete copies of all Jangle Vision Twins works from Ms. Diroma under the pretense of considering her for employment as a designer by AWI.  Defendants have never been given any consent, permission, authorization or license from Plaintiff to use, display, create derivative works based on, or otherwise exploit the Jangle Vision Twins, or any component or element thereof.

40.     Plaintiff is informed and believes, and on that basis alleges, that Defendants since July 2020 have knowingly, willfully and flagrantly infringed Plaintiff's copyrighted Jangle Vision Twins by creating, reproducing, publicly displaying and otherwise commercially exploiting the Infringing Characters in the Infringing Ads, the Infringing Emails and in other displays and uses, including by blast email delivery to Defendants' customer and prospect databases, continuous presentation on Defendants' multiple social media platforms, paid promotional displays on multiple social media platforms, and by other means and media throughout the United States and the world.

41.     Plaintiff is informed and believes, and on that basis alleges, that Defendants have used and relied upon the Infringing Characters, the Infringing Ads and the Infringing Emails as the cornerstone and central component of their promotion, marketing and advertising of the Defendants' rhinestone line of exclusive, luxury hand bags.  The signature design element of all of the rhinestone bags is a hand bag completely covered with affixed rhinestones.  The Infringing Ads and Infringing Emails, by design, indelibly conflate and merge in the perception of the viewing consumer the highly distinctive, ultramodern, memorable Jangle Vision Twins images, unlawfully reproduced as the Infringing Characters, by displaying the Infringing Characters in pools, intentionally meant to invoke the same circular environment in which Ms. Diroma presented the Jangle Vision Twins, which morph via animation into a field of rhinestones, or which are

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45690905v16

displayed in still images of a field of rhinestones with Infringing Characters visible in many of the rhinestones.

42.     Plaintiff is informed and believes, and on that basis alleges, that the purposeful correlation and integration of the Jangle Vision Twins design with the rhinestone bag product line created by the Infringing Characters, the Infringing Ads and the Infringing Emails has directly, extensively, uniquely and unjustly increased Defendants' sales and profits from the rhinestone bag line.

43.     Plaintiff is further informed and believes, and on that basis alleges, that, building on the popularity and success of the rhinestone bag line generated by Defendants' infringing misuse of the Infringing Characters, the Infringing Ads and the Infringing Emails, Defendants have added the Spin-Off Products, which have generated additional unjust sales and profits.

44.     Defendants' acts of copyright infringement as alleged above were, and continue to be, willful, intentional and malicious.

45.     As a direct, proximate and intended consequence of their creation of, and their massive, initial and ongoing publication and display of, the Infringing Characters, the Infringing Ads and the Infringing Emails, Defendants have realized unjust, unlawful and unfair revenues and profits, including sales of the rhinestone bags and of the Spin-Off Products, as well as enhanced consumer recognition and brand value of the Defendants' brand and associated good will.  Plaintiff is entitled to disgorgement of Defendants' unjust profits and gains attributable to the infringement of the Jangle Vision Twins in an amount according to proof, but believed to be not less than $75 million for U.S. sales alone.

46.     In addition, Defendants' unauthorized publication of the Infringing Characters as alleged above throughout the U.S. and the world for over one year, and continuing, has directly and proximately injured and damaged Plaintiff by misappropriating the essence, the themes and the visual elements of the entire portfolio of Jangle Vision works, concept and brand, which have never previously

been commercially published or exploited by Plaintiff.  By saturating social media and other channels of communication with the Infringing Characters, the Infringing Ads and the Infringing Emails, Defendants have interfered with and completely preempted Plaintiff's plans and opportunities to commercially develop and exploit the Jangle Vision Twins works and concept for Plaintiff's own account.  Among other negative, damaging consequences, Defendants' massive, ongoing publication of the Infringing Characters has preempted and destroyed the market for Plaintiff to sell the original Jangle Vision Twins works as well as limited edition prints, posters and other reproductions of those previously unpublished works.  Plaintiff has suffered actual damages as a direct, proximate consequence of Defendants' infringement in an amount according to proof, but believed to be not less than $6 million.

47.    Plaintiff is without an adequate remedy at law, and will suffer irreparable harm and injury unless Defendants' acts of copyright infringement are enjoined as prayed herein, in that Defendants threaten to and will, unless enjoined, continue to infringe Plaintiff's copyrights and the amount of the economic harm that will be suffered by Plaintiff from such continuing infringement will be extremely difficult to ascertain.

## SECOND CLAIM FOR RELIEF

### (Unfair Competition [Cal. Bus. & Prof. Code, § 17200 *et. seq.*]

### - Against All Defendants and DOES 1-10, Inclusive)

48.    Plaintiff hereby re-alleges and incorporates by reference each of the allegations from paragraph numbers 1 through 36 and 38 through 44 hereof, inclusive, as if fully set forth herein.

49.    Section 17200 of the California Business and Professions Code prohibits unfair competition, including any unlawful, unfair, or fraudulent business act or practice.

50.    Plaintiff is informed and believes, and on that basis alleges, that

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45690905v16

Defendants have used and relied upon the Infringing Characters as the cornerstone and central component of their promotion, marketing and advertising of the rhinestone bag line and the Spin-Off Products, as well as the rebranding of Defendants' entire catalog of product offerings.

51.     Plaintiff is informed and believes, and on that basis alleges, that the purposeful, unlawful correlation and integration of the Jangle Vision Twins design with the rhinestone bag line and spin-off rhinestone embedded products created by the Infringing Characters, the Infringing Ads, the Infringing Emails and other infringing advertising content, as well as Defendants' overall misappropriation and unlawful use of the proprietary, non-public Jangle Vision Twins concept, designs, themes, details and brand has directly, extensively and uniquely increased Defendants' sales and profits from the rhinestone bag line and Spin-Off Products, and further, has significantly enhanced the visibility, fame, value and popularity of Defendants' overall brand among the consumers exposed to Defendants' infringing publications.  Defendants would not have obtained these benefits but for their improper, unfair, unlawful and infringing use and display of the Jangle Vision Twins.

52.     Defendant's conduct constitutes acts of unfair competition in violation of California Business and Professions Code § 17200.

53.     Pursuant to California Business & Professions Code § 17203, Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendants to cease this unfair competition, as well as restitution, including but not limited to disgorgement of all of Defendants' profits associated with this unfair competition, in an amount according to proof but believed to be not less than $75 million.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

1.     That Defendants be adjudged to have infringed upon Plaintiff's registered copyrights in the Jangle Vision Twins in violation of 17 U.S.C. § 106

1  and 508.

2      2.      That Defendants and their agents, officers, directors, servants,

3  employees, attorneys, successors and assigns, and all others in active concert or

4  participation with Defendants be preliminarily and permanently enjoined from

5  directly or indirectly infringing Plaintiff's copyrights in the Jangle Vision Twins .

6      3.      That Defendants, and each of them jointly and severally, be ordered to

7  disgorge to Plaintiff the unjust revenues and profits realized by Defendants as a

8  direct and proximate consequence of Defendants' copyright infringement, in a sum

9  according to proof, but believed to be not less than $75 million.

10      4.      That Plaintiff be awarded against Defendants, and each of them jointly

11  and severally, the actual damages suffered by Plaintiff as a direct and proximate

12  consequence of Defendants' copyright infringement, in a sum according to proof,

13  but believed to be not less than $6 million.

14      5.      That Defendants, and each of them, be preliminarily and permanently

15  enjoined against further acts of unfair competition as alleged herein, and be ordered

16  to make restitution and disgorgement to Plaintiff of all of Defendants' profits

17  associated with this unfair competition in an amount according to proof, but

18  believed to be not less than $75 million, pursuant to Cal. Bus. & Prof. Code §

19  17203.

20      6.      For costs of suit incurred herein, including reasonable attorneys' fees,

21  as allowed by law;

22      7.      For pre-judgment interest as allowed by law; and

23

24

25

26

27

28

8.      For such other, further and different relief as the Court may deem just and proper.


DATED:  August 16, 2021              BUCHALTER
                                     A Professional Corporation


                                     By: _____
                                              C. DENNIS LOOMIS
                                              AARON LEVINE
                                              Attorneys for Plaintiff
                                              JANGLE VISION, LLC

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45690905v16

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims triable by jury.


DATED:  August 16, 2021

BUCHALTER
A Professional Corporation


By:_____
          C. DENNIS LOOMIS
          AARON LEVINE
          Attorneys for Plaintiff
          JANGLE VISION, LLC